UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:23-CV-61352-WILLIAMS/AUGUSTIN-BIRCH

DAYANA GARCIA,

    Plaintiff,

v.

UNIT DOSE SERVICES, LLC,

    Defendant.

_____/

**REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR DEFAULT FINAL JUDGMENT**

The Honorable Kathleen M. Williams, United States District Judge, referred this matter to the undersigned United States Magistrate Judge for a report and recommendation on Plaintiff Dayana Garcia's Motion for Default Final Judgment Against Defendant Unit Dose Services, LLC ("Unit Dose"). DE 15; DE 16. Unit Dose did not respond to the Motion for Default Final Judgment, and the deadline to file a Response has passed. The Court held a hearing on the Motion for Default Final Judgment on August 31, 2023, at which Unit Dose did not appear. Unit Dose has not otherwise appeared in this matter. The Court has carefully considered the Motion for Default Final Judgment, Garcia's supplemental briefing [DE 23], the arguments that Garcia's counsel made during the hearing, and the record and is otherwise fully advised in the premises. For the reasons set forth below, the Court recommends that the Motion for Default Final Judgment be **GRANTED**.

## I. BACKGROUND

Garcia alleged in the Complaint that she worked for Unit Dose as a packager from April 2017 to June 4, 2020, and from October 1, 2020 to August 16, 2021. DE 1 ¶ 13. Juan Pulgarin initially was her co-worker and later became her supervisor. *Id.* ¶¶ 16-17, 21. During the course of Garcia's employment, Pulgarin touched her in an unwelcome manner on one occasion, often made inappropriate comments to and about her, and took pictures and videos of her without her knowledge or permission. *Id.* ¶¶ 16, 18-19. Garcia confronted Pulgarin about his behavior. *Id.* ¶¶ 16, 19. Pulgarin treated her differently than male employees by sending her home early, micromanaging her work, imposing baseless discipline, and denying her requests for time off and schedule changes. *Id.* ¶¶ 22-23. Garcia complained to Pierre Mentor, Pulgarin's supervisor, but to no avail. *Id.* ¶¶ 23, 25. Further, Pulgarin then retaliated against Garcia for her complaints by imposing discipline such as sending her home without pay. *Id.* ¶ 24. On August 16, 2021, Unit Dose terminated Garcia's employment without valid cause, giving the pretextual reason that Unit Dose "was not getting positive results." *Id.* ¶ 26.

Garcia raised four Counts against Unit Dose. As Count I, she contended that Unit Dose violated Title VII of the Civil Rights Act of 1964 by discriminating against her on the basis of sex. As Count II, Garcia asserted that Unit Dose retaliated against her in violation of Title VII. As Count III, she maintained that Unit Dose violated the Florida Civil Rights Act by discriminating against her on the basis of sex. Finally, as Count IV, Garcia contended that Unit Dose retaliated against her in violation of the Florida Civil Rights Act.

According to the proof of service filed on the docket, a process server served Unit Dose's registered agent Michael Correa with the Summons and Complaint on December 1, 2022. DE 5.

On January 12, 2023, the Clerk of Court entered default against Unit Dose. DE 8. The instant Motion for Default Final Judgment followed. DE 15.

## II. LEGAL STANDARDS

A court may enter a default judgment against a party who has failed to plead or otherwise defend an action. Fed. R. Civ. P. 55(a). "A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (quotation marks omitted). The defendant does not, however, admit facts that are not well-pleaded or conclusions of law. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015). A court considering entering a default judgment must ensure that the pleading states a claim upon which relief can be granted. *Id.*

A court may conduct an evidentiary hearing before entering default judgment if a hearing is needed to determine the amount of damages. Fed. R. Civ. P. 55(b)(2)(B). However, an evidentiary hearing is not a *per se* requirement of entry of default judgment. *S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). No hearing is needed "where all essential evidence is already of record." *Id.* That evidence may take the form of affidavits. *Carlisle v. Nat'l Com. Servs., Inc.*, 722 F. App'x 864, 870 (11th Cir. 2018); *see also Brown v. Everest Moving & Storage, Inc.*, No. 12-62530-CIV, 2013 WL 12126001, at *2 (S.D. Fla. Aug. 20, 2013) ("Affidavits based on personal knowledge can be sufficient evidence to establish damages.").

## III. ANALYSIS

### A. Service

As an initial matter, the record indicates that Unit Dose was validly served with process in this matter. A return of service reflects that a process server personally served Unit Dose's

3

registered agent Michael Correa.  DE 5.  Service of process on a business entity may be completed by serving an agent authorized by law to receive service.  Fed. R. Civ. P. 4(h)(1)(B).  Florida law authorizes service on a limited liability company via a designated registered agent.  Fla. Stat. § 48.091(2).  Unit Dose's default in responding to this action is not due to lack of service of process.

### B. Pleading of Claims

#### 1. Discrimination

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  41 U.S.C. § 2000c-2(a)(1).  Similarly, under the Florida Civil Rights Act, it is unlawful for an employer to "discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."  Fla. Stat. § 760.10(1)(a).  The Florida Civil Rights Act was patterned after Title VII, and decisions construing Title VII apply to claims under Florida's Act.  *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

To establish a prima facie case of disparate treatment in violation of Title VII, a plaintiff must show that "(1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated male employees more favorably; and (4) she was qualified to do the job."  *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000).  Women are a protected class under Title VII.  *Woody v. City of W. Mia.*, 477 F.

Supp. 1073, 1078 (S.D. Fla. 1979).  Termination of employment is an adverse employment action.  *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

Garcia adequately pled claims of sex discrimination in violation of Title VII (Count I) and the Florida Civil Rights Act (Count III).  She pled that she is female and that Unit Dose ultimately terminated her employment.  DE 1 ¶¶ 5, 26.  Garcia pled that, after she rejected Pulgarin's advances, he treated her differently than male employees by sending her home early, micromanaging her work, imposing baseless discipline, and denying her requests for time off and schedule changes.  *Id.* ¶¶ 16, 22-23.  Finally, she pled that she was qualified for her position as a packager, as evidenced by over three years of employment with positive performance and work history and no negative reviews.  *Id.* ¶¶ 15, 32.  Unit Dose, by failing to respond to the Complaint in a timely manner, has defaulted and admitted these facts.  Garcia is entitled to a default judgment on Counts I and III.

**2. Retaliation**

To establish a prima facie case of retaliation in violation of Title VII, a plaintiff must show that "(1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision."  *Pipkins v. City of Temple Terrace*, 267 F.3d 1197, 1201 (11th Cir. 2001).  Statutorily protected activity includes internal complaints of sexual harassment to superiors.  *Id.*

Garcia adequately pled claims of retaliation in violation of Title VII (Count II) and the Florida Civil Rights Act (Count IV).  She pled that she complained about Pulgarin's harassing conduct to his supervisor and that Unit Dose ultimately terminated her employment.  DE 1 ¶¶ 23, 25-29.  Garcia also pled that the termination of her employment was a direct result of her

5

complaints about Pulgarin. *Id.* ¶ 45. She complained about Pulgarin for the last time on August 15, 2021, and her employment was terminated the following day, supporting the inference of a causal connection. *See id.* ¶¶ 25-26. Unit Dose, by failing to respond to the Complaint in a timely manner, has defaulted and admitted these facts. Garcia is entitled to a default judgment on Counts II and IV. The Court therefore recommends that default final judgment be entered in favor or Garcia and against Unit Dose on Counts I through IV.

### C. Damages

A court that finds that an employer intentionally engaged in an unlawful employment practice in violation of Title VII may award the prevailing party backpay, punitive damages, reasonable attorney's fees and costs, and compensatory damages of "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. §§ 1981a(a)(1), (b), 2000e-5(g)(1), (k). The amount available for compensatory damages (excluding back pay) together with punitive damages is capped based on the employer's number of employees. *Id.* § 1981a(b)(3).

A court that finds that an employer violated the Florida Civil Rights Act may award the prevailing party backpay, reasonable attorney's fees and costs, and "compensatory damages, including, but not limited to, damages for mental anguish, loss of dignity, and any other intangible injuries, and punitive damages." Fla. Stat. § 760.11(5), (13). Punitive damages may not exceed $100,000. *Id.* § 760.11(5).

#### 1. Backpay

Garcia seeks backpay totaling $7,905, consisting of (1) $4,680 for the period of 9 weeks she was unemployed after Unit Dose terminated her employment ($13 hourly wage x 40 hours per week x 9 weeks); and (2) $3,225 for a period of 30 weeks after she regained employment but

6

earned $107.50 less per week than she earned at Unit Dose ($107.50 per week x 30 weeks).[1] Garcia provided an affidavit supporting this amount in backpay. DE 15-1. The Court recommends that Garcia be awarded $7,905 in backpay.

### 2. Damages for Emotional Distress

Garcia seeks an award of damages for emotional distress. A court has a great deal of discretion in a Title VII case when deciding the amount to be awarded for intangible compensatory damages such as emotional distress. *Akouri v. State of Fla. Dep't of Transp.*, 408 F.3d 1338, 1344-45 (11th Cir. 2005). Damages for emotional distress "must be proven by competent, sufficient evidence." *Id.* at 1345. "[A]lthough a plaintiff's testimony, standing alone, can support an award of compensatory damages for emotional distress based on a constitutional violation, the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated . . . ." *Id.*; *see Davis v. Fla. Agency for Health Care Admin.*, 612 F. App'x 983, 987 (11th Cir. 2015) (affirming an award of damages for mental and emotional anguish in a Title VII case where the plaintiff testified that she suffered from weight fluctuations, stopped going to events due to stress, was embarrassed in front of co-workers, had lowered self-esteem, and lost friends); *Tucker v. Hous. Auth. of Birmingham Dist.*, 229 F. App'x 820, 827 (11th Cir. 2007) (affirming an award of $100,000 in damages for mental anguish in a Title VII case where the plaintiff testified that his relationship with his family suffered due to depression and anxiety, he felt humiliated at being unemployed and would pretend to go to work, and he had digestive problems and an inability to sleep).

---

[1] Title VII limits backpay to that accruing no more than two years prior to a plaintiff filing an E.E.O.C. charge. 42 U.S.C. § 2000e-5(g)(1). Garcia filed her E.E.O.C. charge on October 1, 2021, and she does not seek backpay from more than two years prior to that date. *See* DE 1 ¶ 10.

Garcia stated in an affidavit that she felt "anxious, angry, depressed, and degraded on a daily basis" due to Pulgarin's sexual advances and harassment. DE 23-1 ¶¶ 3, 7. Her "coworkers began to socially isolate [her] while at work," and she believes they did this to avoid confrontation with and discipline from Pulgarin. *Id.* ¶ 5. Her social relationships with coworkers deteriorated. *Id.* ¶ 6. She "began to feel hopeless" after Unit Dose terminated her employment without cause. *Id.* ¶ 8. She now feels anxious and tends to socially isolate herself at work because she is "scared of being harassed and/or retaliated against." *Id.* ¶ 9.

Garcia seeks $100,000 in damages for her emotional distress. Such an amount is within the range of damages awarded for emotional distress in Title VII cases in this District. *See, e.g., Joss v. United Home Mortg. Ctr. of Fla., Inc.*, No. 09-60411-CIV, 2011 WL 13272300, at *3-4 (S.D. Fla. Jan. 26, 2011) (awarding $100,00 for emotional distress when the plaintiff testified that she feared men, did not want to be alone with a man, did not want to go out alone at night, suffered from crying spells, became less social and outgoing, and distanced herself from others), *report and recommendation adopted*, 2011 WL 13272301 (S.D. Fla. Mar. 7, 2011); *Hudson v. Chertoff*, 473 F. Supp. 2d 1286, 1287-88, 1290-92 (S.D. Fla. 2007) (awarding the statutory cap of $300,000 for emotional pain and mental anguish when witnesses testified that the plaintiff suffered a relapse in his depression, was anxious and distressed, felt "sick" and "destroyed," was nauseous, cried uncontrollably, had difficulty sleeping, was "unable to enjoy life's everyday pleasures," had strained relationships with his wife and daughter, and was socially isolated); *Bernstein v. Sephora*, 182 F. Supp. 2d 1214, 1228-30 (S.D. Fla. 2002) (awarding $75,000 for emotional pain and mental anguish when the plaintiff testified that she had trouble sleeping and waking, lost her appetite, was no longer her usual easy-going self, and felt sick, angry, furious, upset, and anxious, and when there was evidence of medical conditions such as a jaw condition and gastrointestinal problems

but a weak causal link between these conditions and the Title VII violation). In considering the damages awarded for emotional distress in past cases, the Court is cognizant that some of these cases are from several years ago. *Cf. Hudson*, 473 F. Supp. 2d at 1291 ("The cases upon which the defendant relies to support its position that $150,000 should be the benchmark figure for compensatory damages for mental anguish are not dispositive. The Eleventh Circuit Court decision was decided more than ten years ago and the district court decision was decided more than six years ago.").

Compensatory damages for Title VII violations together with punitive damages is capped based on the employer's number of employees. 42 U.S.C. § 1981a(b)(3). Unit Dose's number of employees is not clear from the record. However, the Florida Civil Rights Act does not cap compensatory damage awards. Fla. Stat. § 760.11(5). Thus, $100,000 is an available amount for damages for Garcia's emotional distress in this case. *See Bradshaw v. Sch. Bd. of Broward Cnty.*, 486 F.3d 1205, 1207-08 (11th Cir. 2007) ("Bradshaw's award is limited only by the combined effect of state and federal law limits on damages. . . . So if Title VII cannot remedy the full extent of her injury because of its damage cap, then the remaining portion of her injury should be remedied as much as possible under the Florida [Civil Rights Act], and vice versa." (emphasis omitted)). Having considered the caselaw and the record, the Court recommends that Garcia be awarded $100,000 for emotional distress.

### 3. Punitive Damages

Garcia seeks an award of punitive damages. A prevailing party may recover punitive damages under Title VII if the party demonstrates that the employer engaged in a discriminatory practice "with malice or with reckless indifference to the federal protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). "Malice means an intent to harm and recklessness means

serious disregard for the consequences of one's actions." *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 611 (11th Cir. 2000) (alteration and quotation marks omitted) (explaining that "mere negligence as to the civil rights of employees is not enough to justify punitive damages"). The employer must at least have discriminated "in the face of a perceived risk that its action will violate federal law." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535-36 (1999) (rejecting an argument that malice or reckless indifference requires a showing of egregious or outrageous discrimination, although stating that egregious or outrageous conduct may be evidence of the employer's state of mind). The prevailing party also must impute the discriminating employee's conduct to the employer "by showing either that the discriminating employee was high up the corporate hierarchy, or that higher management countenanced or approved his behavior." *E.E.O.C. v. Excel, Inc.*, 884 F.3d 1326, 1331 (11th Cir. 2018) (alterations and quotation marks omitted).

Garcia alleged that Pulgarin touched her in an unwelcome manner on one occasion, often made inappropriate comments to and about her, and took pictures and videos of her without her knowledge or permission. DE 1 ¶¶ 16, 18-19. Pulgarin treated her differently than male employees by sending her home early, micromanaging her work, imposing baseless discipline, and denying her requests for time off and schedule changes. *Id.* ¶¶ 22-23. Garcia complained to Pulgarin's supervisor Mentor about the harassment and disparate treatment to no avail, and eventually her employment was terminated without valid cause and for a pretextual reason. *Id.* ¶¶ 23-26. From these allegations, the Court concludes that Unit Dose at minimum acted with reckless indifference to Garcia's right under federal and state law to be free from discrimination on the basis of sex. Further, as a supervisor's (Pulgarin) supervisor (Mentor) failed to take any action to correct Pulgarin's behavior, and as someone high enough in management to terminate employment

eventually did so with respect to Garcia, the Court imputes the behavior of Pulgarin and Mentor to Unit Dose.

Garcia seeks $100,000 for punitive damages, which is the statutory cap for such damages under the Florida Civil Rights Act.  Fla. Stat. § 760.11(5).  It is not uncommon for plaintiffs in Title VII cases in this District to receive an award of the statutory cap for punitive damages. *See, e.g.*, *Pierre v. Park Hotels & Resort, Inc.*, No. 17-cv-21955, 2019 WL 12520070, at *1 (S.D. Fla. July 31, 2019) (awarding the statutory cap of $300,000 for punitive damages after the plaintiff's employment was terminated in retaliation for her requests to practice her religion); *Joss*, 2011 WL 13272300, at *1-2, 5 (awarding the statutory cap of $50,000 for punitive damages after the plaintiff was denied compensation and commissions and her employment was constructively terminated following her complaints that her supervisor made unwelcome sexual advances and comments, requested sexual favors, and groped her).  Having considered the caselaw and the record, the Court recommends that Garcia be awarded $100,000 in punitive damages.

### 4. Attorney's Fees

Garcia seeks an award of attorney's fees.  Reasonable attorney's fees are calculated by determining the lodestar, which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  *McKenzie v. Cooper, Levins & Pastko, Inc.*, 990 F.2d 1183, 1185 (11th Cir. 1993) (affirming the use of a lodestar calculation in a Title VII case).  "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).  Garcia seeks attorney's fees totaling $5,475, consisting of (1) $3,835 for 11.8 hours that a junior partner with 7 years' experience expended at a rate of $325 per hour; and (2) $1,640 for 8.2 hours that a first-year

associate expended at a rate of $200 per hour. The two attorneys provided affidavits and billing records supporting those amounts. DE 15-2 to -5. Having reviewed the affidavits and billing records, the Court concludes that the hourly rates, hours expended, and total amount sought for attorney's fees are reasonable. The Court recommends that Garcia be awarded $5,475 in attorney's fees.

5. Costs

Garcia seeks an award of costs totaling $452.63, consisting of (1) $402 for the court filing fee; (2) $50 for the service of process fee; and (3) $0.63 for postage. She provided a billing record supporting those amounts. DE 15-6. In a civil rights case, "[w]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs." *Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1209 (11th Cir. 1983) (alteration and quotation marks omitted). The Court recommends that Garcia be awarded $452.63 in costs.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that the Motion for Default Final Judgment [DE 15] be **GRANTED**. The Court recommends that default final judgment be entered in favor of Plaintiff Dayana Garcia and against Defendant Unit Dose Services, LLC. The Court further recommends that Garcia be awarded damages totaling $213,832.63, consisting of $7,905 in backpay, $100,000 for emotional distress, $100,000 in punitive damages, $5,475 in attorney's fees, and $452.63 in costs, together with statutory interest.

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations.

28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(a).  The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2014).

      **DONE AND SUBMITTED** in Chambers at Fort Lauderdale, Florida, this 2nd day of October, 2023.

                                             PANAYOTTA AUGUSTIN-BIRCH
                                             UNITED STATES MAGISTRATE JUDGE